UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JAMAR WALKER,

                    Plaintiff,                              Case No. 1:24-cv-726

v.                                                          Honorable Sally J. Berens

KELLY HARDENBERG et al.,

                    Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court

will grant Plaintiff leave to proceed *in forma pauperis*. Pursuant to 28 U.S.C. § 636(c) and Rule 73

of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action

under the jurisdiction of a United States Magistrate Judge. (ECF No. 9.)

This case is presently before the Court for preliminary review under the Prison Litigation

Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C.

§§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial

review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131,

1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).

Service of the complaint on the named defendants is of particular significance in defining

a putative defendant's relationship to the proceedings. "An individual or entity named as a

defendant is not obliged to engage in litigation unless notified of the action, and brought under a

court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S.

344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is

fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

2

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will partially dismiss Plaintiff's complaint for failure to state a claim for the reasons detailed below.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Saginaw Correctional Facility (SRF) in Freeland, Saginaw County, Michigan. The events about which Plaintiff complains occurred at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. Plaintiff sues the following DRF staff in their individual and official capacities: Corrections Officer Kelly Hardenberg; Corrections Officer Unknown Gager; Prisoner Counselor Unknown Nesbitt; Resident Unit Manager (RUM) Unknown Fleischer;

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

Corrections Officer Unknown Copeland; RUM Unknown Blair; Corrections Officer Nathen Spohn; Corrections Officer Unknown Lott; and Warden Randee Rewerts. (Compl., ECF No. 1, PageID.2–5.)

In Plaintiff's complaint, she states that she was "diagnosed with Gender Dysphoria" on August 17, 2022, and that she is "a transgender inmate (male to female)," who uses "she and her" pronouns.[2] (*Id.*, PageID.11.) Plaintiff states that she did not disclose "her transgender/[gender identity disorder (GID)] status to other inmates" at DRF. (*Id.*)

On November 1, 2022, "Plaintiff discreetly informed Defendant Hardenberg that she need[ed] to take a shower during count for privacy and safety concerns due to her being on GID status." (*Id.*) In response, Defendant Hardenberg "loudly replied," stating: "I know you[ are] GID but you f[******] don't get special treatments on my shift so take your shower on your yard like a man . . . ." (*Id.*) Plaintiff then told Defendant Hardenberg that she would be filing a Prison Rape Elimination Act (PREA) grievance regarding this issue. (*Id.*) Thereafter, Defendant Hardenberg wrote a "falsified" misconduct report, "which Plaintiff was found guilty [of] by Defendant Blair but [it] was later dismissed for a due process violation." (*Id.*)

Subsequently, on November 9, 2022, Defendant Hardenberg "stated in front of other officers and inmates" that he had written Plaintiff the November 1, 2022 misconduct report because Hardenberg "called health care and they said [Plaintiff] did not take [her] hormone pills" and Hardenberg "want[ed] them GID t[***] [to] grow." (*Id.*) An inmate then asked Defendant Hardenberg what "GID" stood for, and Hardenberg said that Plaintiff was a "chick with a d[***]" and was taking hormones. (*Id.*) Plaintiff asked Defendant Hardenberg not to tell others about "her

---

[2] In this opinion, the Court corrects the capitalization and punctuation in quotations from Plaintiff's complaint.

personal information," and Plaintiff asked to speak to a sergeant. (*Id.*, PageID.11–12.) Defendant Hardenberg denied Plaintiff's request and ordered her to go to the medicine line. (*Id.*, PageID.12.) Plaintiff complied, but after she returned to her unit, she reported the incident and again asked to speak to a sergeant. (*Id.*) A non-party sergeant arrived and Plaintiff asked to be placed in protective custody. (*Id.*) Defendant Hardenberg then "intervened" and told Plaintiff that if she went to segregation it would be for a disobeying a direct order misconduct for "refusal to lock." (*Id.*) "Plaintiff decided against going to segregation for a misconduct" and instead returned to her cell. (*Id.*) That same day, November 9, 2022, Plaintiff filed a "PREA/grievance against [Defendant Hardenberg] . . . for disclosing [that Plaintiff] was [a] GID inmate."[3] (*Id.*, PageID.17.)

Plaintiff alleges that over the following weeks, she was "extorted for money and pressed for sexual favors." (*Id.*, PageID.12.) Plaintiff reported these incidents via the PREA hotline. (*Id.*) Defendant Fleischer then interviewed Plaintiff, and Fleischer told Plaintiff that he would place her in another unit "but not place her in protection because protection is for inmates who really need it so she needs to stop trying to be a girl." (*Id.*)

On November 28, 2022, Defendant Gager conducted a shakedown of Plaintiff's cell. (*Id.*, PageID.15.) Defendant Gager confiscated Plaintiff's headphones and "then falsified a contraband removal record and a misconduct," claiming that the headphones were "altered." (*Id.*) The next day, November 29, 2022, a non-party sergeant reviewed the misconduct ticket and "offered Plaintiff a plea of 15 sanction days for the alleged altered headphones." (*Id.*) Plaintiff did not take the plea offer, advising the non-party sergeant that she believed she was "being retaliated on for writing a grievance on [Defendant] Hardenberg." (*Id.*) Thereafter, on December 1, 2022,

---

[3] In the complaint, Plaintiff states that she filed this "PREA/grievance" on November 9, 2023, rather than November 9, 2022; however, based on the other facts in the complaint, Plaintiff's reference to 2023 appears to be a typographical error. (*See* Compl., ECF No. 1, PageID.12, 17.)

Defendant Gager told Plaintiff that if she "sign[ed] off the PREA on Hardenberg," Gager would return Plaintiff's headphones. (*Id.*) Defendant Gager further stated that if Plaintiff refused to sign off on the PREA, then Gager would destroy the headphones. (*Id.*) "Plaintiff then made multiple attempts to have a hearing conducted" regarding the confiscated headphones, to no avail. (*Id.*) On December 18, 2022, Plaintiff learned that the headphones were "no longer in the contraband locker and had been destroyed." (*Id.*)

In mid-December, Plaintiff was moved to the 500 unit at DRF. (*Id.*, PageID.17.) A few days later, Plaintiff asked Defendant Nesbitt if Plaintiff could be moved to a new cell because Plaintiff had learned that her cellmate "was not a GID offender" and "had a history of violence inside the MDOC." (*Id.*) Defendant Nesbitt denied Plaintiff's request to be moved. (*Id.*) On January 1, 2023, Plaintiff's cellmate hit "Plaintiff in the face" after Plaintiff denied her cellmate's request for a sexual favor. (*Id.*) The next day, Plaintiff informed Defendant Nesbitt about this incident and asked to be moved to a new cell. (*Id.*) Defendant Nesbit refused to move Plaintiff. (*Id.*)

On January 10, 2023, Defendant Nesbitt called Plaintiff to his office, and informed Plaintiff about "the PREA finding against Hardenberg." (*Id.*) While in Defendant Nesbitt's office, Plaintiff again asked to be moved to a new cell. (*Id.*) Defendant Nesbitt said that he would not move Plaintiff "because of this PREA." (*Id.*)

On January 17, 2023, Plaintiff received a medical detail "to lock with only other GID inmates due to her diagnosis" and "privacy needs." (*Id.*, PageID.17–18.) Plaintiff gave the medical detail to Defendant Nesbitt, and Defendant Nesbitt said that he would not move Plaintiff to a new cell "detail or no detail." (*Id.*, PageID.18.) Two days later, Plaintiff again asked Defendant Nesbitt to move Plaintiff to a new cell because Plaintiff's cellmate had been threatening "to cause her

bodily harm if she didn't perform sexual acts." (*Id.*) Defendant Nesbitt refused to move Plaintiff and "ordered Plaintiff to go lock down for count time." (*Id.*) Plaintiff complied because she did not want to receive a disobeying a direct order misconduct ticket. (*Id.*) A couple of hours later, Plaintiff's cellmate choked Plaintiff and "made Plaintiff agree to perform" a sexual act. (*Id.*) Plaintiff spoke with Defendant Blair about the matter, and Blair placed Plaintiff on temporary protection "over the weekend." (*Id.*)

On January 20, 2023, while in the segregation unit at DRF, Defendant Spohn gave Plaintiff her coat, so that she could "be escorted to [the] seg[regation] yard." (*Id.*, PageID.21.) Plaintiff told Defendant Spohn that she also needed her shoes "because it was snowing and cold." (*Id.*) Defendant Spohn then told Plaintiff that if she failed to comply with the order to "cuff up and go to yard," Spohn would write Plaintiff a disobeying a direct order misconduct ticket, stating: "I'm paying you back for writing that PREA on Hardenberg." (*Id.*) Plaintiff complied with the order and was outside without shoes for an hour. (*Id.*) When Plaintiff returned from being outside, she "requested medical due to pain in [her] chest, throat, and feet." (*Id.*) Thereafter, on January 24, 2023, Plaintiff filed "a PREA/grievance" regarding the above-discussed incident with Defendant Spohn. (*Id.*, PageID.23.)

On January 26, 2023, Defendant Copeland came to Plaintiff's cell to pass out mail. (*Id.*) Defendant Copeland told Plaintiff that she had legal mail, but that Copeland "was told by [Defendant] Blair not to give it to [Plaintiff] because [of] the PREAs [Plaintiff had] on Hardenberg and Spohn." (*Id.*) The next day, January 27, 2023, Plaintiff asked Defendant Blair about Plaintiff's legal mail, and Blair stated: "Yea[h], I have it in my office but if you don't apologize to Hardenberg [and] agree to stop calling the PREA hotline and sign off [on] the PREA grievance on Spohn, you[ are] not getting it cause you[ are] a real pain in the ass." (*Id.*) Shortly thereafter, Defendant

Lott conducted rounds in the unit, and asked if Plaintiff was "ready to sign off those grievance[s]" so she could "get [her] legal mail." (*Id.*) Plaintiff refused to sign off on the grievances and asked "to see shift command." (*Id.*) At an unspecified time after this, Defendant Lott wrote Plaintiff a false misconduct ticket, "which Defendant Blair found her guilty on but was later dismissed" by the non-party Assistant Deputy Warden. (*Id.*) During the evening meal on an unspecified date, Plaintiff asked Defendant Copeland about Plaintiff's legal mail, and Copeland stated: "I'm not giving it to you unless you agree to do what the boss said with those grievances." (*Id.*) Plaintiff then told Defendant Copeland that she would be writing a grievance. (*Id.*) Plaintiff states that she later received an envelope with the return address of this Court, but did not receive any mail in the envelope. (*Id.*, PageID.24.)

Based on the foregoing allegations, Plaintiff avers that Defendants violated her rights under the First, Eighth, and Fourteenth Amendments to the United States Constitution. (*Id.*, PageID.6.) Additionally, Plaintiff references Defendant Blair violating Plaintiff's rights under the Americans with Disabilities Act (ADA) (*id.*, PageID.14), and Plaintiff alleges that Defendant Nesbitt acted negligently in response to Plaintiff's request to be moved to a new cell or to protective custody (*id.*, PageID.19–20). Plaintiff seeks monetary damages, as well as declaratory and injunctive relief.

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that

is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because Section 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under Section 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Defendant Rewerts

With respect to Defendant Rewerts, the Warden at DRF, although Plaintiff lists Rewerts as a Defendant, Plaintiff fails to name Rewerts when setting forth the factual allegations in the complaint. (*See generally* Compl., ECF No. 1.)

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 555–61 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is

named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights).

Here, Plaintiff does not name Defendant Rewerts in the body of her complaint. (*See generally* Compl., ECF No. 1.) The United States Court of Appeals for the Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011) (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008)). In this action, Plaintiff's claims against Defendant Rewerts fall far short of the minimal pleading standards under Rule 8 of the Federal Rules of Civil Procedure and are subject to dismissal. Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

Moreover, to the extent that Plaintiff seeks to hold Defendant Rewerts liable due to his supervisory position, government officials, such as Defendant Rewerts, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not

enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). And Section 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995)).

Here, Plaintiff fails to allege any facts showing that Defendant Rewerts encouraged or condoned the conduct of his subordinates, or authorized, approved, or knowingly acquiesced in the conduct. Plaintiff's conclusory allegations of supervisory responsibility are insufficient to show that Defendant Rewerts was personally involved in the alleged violations of Plaintiff's constitutional rights. *See, e.g.*, *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers*, 368 F.3d at 888. Therefore, for the reasons set forth above, all of Plaintiff's claims against Defendant Rewerts will be dismissed for failure to state a claim.

### B.    Official Capacity Claims

Plaintiff sues Defendants in their official and individual capacities. (Compl., ECF No. 1, PageID.2–5.) A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity: in this case, the MDOC. *See Will v. Mich. Dep't of State Police*,

491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). Moreover, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under Section 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will*, 491 U.S. at 66); *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013).

Here, Plaintiff seeks monetary damages, as well as declaratory and injunctive relief. However, an official capacity defendant is absolutely immune from monetary damages. *See Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998). Therefore, Plaintiff may not seek monetary damages against Defendants in their official capacities, and she fails to state any claim upon which relief can be granted for monetary damages against Defendants in their official capacities.

Although damages claims against official capacity defendants are properly dismissed, an official capacity action seeking injunctive or declaratory relief constitutes an exception to sovereign immunity. *See Ex parte Young*, 209 U.S. 123, 159–60 (1908) (holding that the Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). The United States Supreme Court has determined that a suit under *Ex Parte Young* for prospective injunctive relief should not be treated as an action against the state. *Kentucky v. Graham*, 473 U.S.

12

159, 167 n.14 (1985). Instead, the doctrine is a fiction recognizing that unconstitutional acts cannot have been authorized by the state and therefore cannot be considered done under the state's authority. *Id.*

Nonetheless, the Supreme Court has cautioned that, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). Past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subjected to the illegal conduct again. *See, e.g.*, *Los Angeles v. Lyons*, 461 U.S. 95 (1983) (addressing injunctive relief); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (addressing declaratory relief).

Further, the Sixth Circuit has held that transfer to another correctional facility moots a prisoner's injunctive and declaratory claims. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (holding that a prisoner-plaintiff's claims for injunctive and declaratory relief became moot when the prisoner was transferred from the prison about which he complained); *Mowatt v. Brown*, No. 89-1955, 1990 WL 59896 (6th Cir. May 9, 1990); *Tate v. Brown*, No. 89-1944, 1990 WL 58403 (6th Cir. May 3, 1990); *Williams v. Ellington*, 936 F.2d 881 (6th Cir. 1991). Here, Plaintiff is no longer confined at DRF, which is where she avers that Defendants are employed. Thus, Plaintiff cannot maintain her claims for declaratory and injunctive relief against Defendants.

Therefore, Plaintiff has failed to state a claim against Defendants in their official capacities upon which relief can be granted. Accordingly, Plaintiff's official capacity claims against Defendants will be dismissed for failure to state a claim.

### C.    First Amendment Claims

#### 1.    Retaliation Claims—Defendants Hardenberg, Gager, Nesbitt, Spohn, Copeland, Blair, Lott

Plaintiff indicates that she is bringing First Amendment retaliation claims, and the Court construes Plaintiff's complaint to raise retaliation claims against Defendants Hardenberg, Gager, Nesbitt, Spohn, Copeland, Blair, and Lott.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) she was engaged in protected conduct; (2) an adverse action was taken against her that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

In this action, Plaintiff alleges the following facts that are relevant to her First Amendment retaliation claims:[4] (i) in November of 2022, after Plaintiff told Defendant Hardenberg that she would be filing a PREA grievance about Hardenberg disclosing her "GID status," Defendant Hardenberg wrote a "falsified" misconduct report (Compl., ECF No. 1, PageID.11); (ii) on November 28, 2022, Defendant Gager confiscated Plaintiff's headphones during a shakedown of Plaintiff's cell, and falsified a contraband removal record and a misconduct," claiming that the

---

[4] The Court notes that each of the actions listed below do not necessarily constitute retaliatory actions; however, the below listed facts are all relevant to Plaintiff's First Amendment retaliation claims.

headphones were "altered;" on December 1, 2022, Defendant Gager told Plaintiff that if she "sign[ed] off [on] the PREA on Hardenberg," Gager would return Plaintiff's headphones, but that if Plaintiff refused to sign off on the PREA grievance, then Gager would destroy the headphones (*id.*, PageID.15); (iii) on January 10, 2023, Defendant Nesbitt called Plaintiff to his office, and informed Plaintiff about "the PREA finding against Hardenberg," and at that time, Plaintiff again asked to be moved to a new cell due to safety concerns; however, Defendant Nesbitt said that he would not move Plaintiff "because of this PREA" (*id.*, PageID.17); (iv) on January 20, 2023, Plaintiff told Defendant Spohn that she needed her shoes for use during segregation yard time "because it was snowing and cold," but Spohn refused to provide the shoes, stating: "I'm paying you back for writing that PREA on Hardenberg" (*id.*, PageID.21); (v) on January 26, 2023, Defendant Copeland informed Plaintiff that Copeland "was told by [Defendant] Blair not to give [Plaintiff her piece of legal mail] because [of] the PREAs [Plaintiff had] on Hardenberg and Spohn," and the next day, Plaintiff asked Defendant Blair about Plaintiff's legal mail, and Blair stated: "Yea[h], I have it in my office but if you don't apologize to Hardenberg [and] agree to stop calling the PREA hotline and sign off [on] the PREA grievance on Spohn, you[ are] not getting it cause you[ are] a real pain in the ass;" Plaintiff also asked Defendant Lott for the legal mail, and Lott asked if Plaintiff was "ready to sign off those grievance[s]" so she could "get [her] legal mail;" at an unspecified time after this, Defendant Lott wrote Plaintiff a "false" misconduct ticket; and, during the evening meal on an unspecified date, Plaintiff asked Defendant Copeland about Plaintiff's legal mail, and Copeland stated: "I'm not giving it to you unless you agree to do what the boss said with those grievances" (*id.*, PageID.23).

At this stage of the proceedings, the Court must take Plaintiff's allegations as true and in the light most favorable to Plaintiff. Although Plaintiff has by no means proven her claims, at this

time, the Court will not dismiss Plaintiff's First Amendment retaliation claims against Defendants Hardenberg, Gager, Nesbitt, Spohn, Copeland, Blair, and Lott.

### 2. Interference with Access to Legal Mail Claims

Plaintiff alleges that Defendants interfered with her access to legal mail that was originally received at the prison on January 24, 2023. (Compl., ECF No. 1, PageID.23–24 .)

"A prisoner's right to receive mail is protected by the First Amendment." *Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). "Mail is one medium of free speech, and the right to send and receive mail exists under the First Amendment." *Al-Amin v. Smith*, 511 F.3d 1317, 1333 (11th Cir. 2008) (citing *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 427 (1993)). A prisoner, however, retains only those First Amendment freedoms that are "not inconsistent with his [or her] status as a prisoner or with legitimate penological objectives of the corrections systems." *Martin v. Kelley,* 803 F.2d 236, 240 n.7 (6th Cir. 1986) (*quoting Pell*, 417 U.S. at 822); *see Turner v. Safley,* 482 U.S. 78 (1987).

The Sixth Circuit has held that prison regulations governing "legal" mail are subject to a heightened standard greater than those governing general mail. *See Sallier v. Brooks*, 343 F.3d 868, 873–74 (6th Cir. 2003) (finding that legal mail is entitled to a heightened level of protection to avoid impinging on a prisoner's legal rights, the attorney-client privilege, and the right to access the courts). The ability of a prisoner "to receive materials of a legal nature" implicates a fundamental right. *Kensu*, 87 F.3d at 174; *see Sallier*, 343 F.3d at 873–74 (finding that legal mail is entitled to a heightened level of protection to avoid impinging on a prisoner's legal rights, the attorney-client privilege, and the right to access the courts). Courts have therefore extended protections to prisoners' legal mail that do not exist for general mail. For example, although "prison officials may open prisoners' incoming mail pursuant to a uniform and evenly applied policy with an eye to maintaining prison security," *Lavado v. Keohane*, 992 F.2d 601, 607 (6th

Cir. 1993), "the opening of 'legal mail' should generally be in the inmate's presence." *Kensu*, 87 F.3d at 174 (citing *Wolff v. McDonnell*, 418 U.S. 539, 576–77 (1974)).

"[W]hat constitutes 'legal mail' is a question of law." *Sallier*, 343 F.3d at 871. The Sixth Circuit has held that "'blatant disregard' for mail handling regulations concerning legal mail violates constitutional protections," *Merriweather v. Zamora*, 569 F.3d 307, 317 (6th Cir. 2009) (citing *Lavado*, 992 F.2d at 609), and that "[t]wo or three pieces of mail opened in an arbitrary or capricious way suffice to state a claim." *Id.* (citing *Sallier*, 343 F.3d at 879-80; *Lavado*, 992 F.2d at 609). However, "isolated instances of interference with prisoners' mail" may not rise to the level of a constitutional violation under the First Amendment. *See Johnson v. Wilkinson*, No. 98-3866, 2000 WL 1175519, at *2 (6th Cir. Aug. 11, 2000) ("This random and isolated interference with Johnson's mail did not violate his constitutional rights." (citation omitted)); *see also Gardner v. Howard*, 109 F.3d 427, 431 (8th Cir. 1997) (holding that an "isolated incident, without any evidence of improper motive or resulting interference with [the inmate's] right to counsel or to access to the courts, does not give rise to a constitutional violation" (citations omitted)); *Okoro v. Scibana*, 63 F. App'x 182, 184 (6th Cir. 2003) (stating that "Okoro was only able to provide one specific incident where he allegedly did not receive the full contents of a letter from his wife," and concluding that "[s]uch a random and isolated incident is insufficient to establish a constitutional violation" (citation omitted)); *cf. Colvin v. Caruso*, 605 F.3d 282, 293 (6th Cir. 2010) (citing *Johnson* for the holding that "isolated interference" with prisoners' rights may not rise to the level of a First Amendment violation).

In this action, Plaintiff alleges that Defendants interfered with her accessing one piece of mail that was originally received at the prison on January 24, 2023, which Plaintiff describes as legal mail. (Compl., ECF No. 1, PageID.23–24.) The Court recognizes that legal mail is entitled

to additional protections and that it is possible that, under some circumstances, even one instance of interference with legal mail could violate an inmate's constitutional rights. However, the facts alleged by Plaintiff are not such a circumstance.

Here, Plaintiff alleges that she did not receive one piece of unspecified legal mail. The Court does not condone the actions of Defendants; however, this instance of interference with Plaintiff's receipt of one piece of legal mail is not sufficient to state a claim. *See, e.g.*, *Merriweather*, 569 F.3d at 317 (citing *Lavado*, 992 F.2d at 609); *Anderson v. Andrews*, No. 2:09-cv-109, 2010 WL 3475030, at *3 (W.D. Mich. July 1, 2010) ("[T]he opening of one piece of properly marked legal mail outside the prisoner's presence is not enough to state a claim."), *report & recommendation adopted*, 2010 WL 3474988 (Sept. 2, 2010).

Accordingly, Plaintiff's claims regarding the interference with her access to one piece of unspecified legal mail will be dismissed for failure to state a claim.

### D.    Access to the Courts Claims

Plaintiff next claims that Defendants' interference with her access to her legal mail in January of 2023 violated her right to access the courts. (*See* Compl., ECF No. 1, PageID.23–24.)

It is clearly established that prisoners have a constitutionally protected right of access to the courts under the First and Fourteenth Amendments. *See Lewis v. Casey*, 518 U.S. 343, 354 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Wolff*, 418 U.S. at 556. In order to state a viable claim for interference with the plaintiff's access to the courts, the plaintiff must show actual injury to pending or contemplated litigation. *See Lewis*, 518 U.S. at 349; *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999). The Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518

U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.*

In other words, a plaintiff must plead and show that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, the plaintiff's efforts to pursue a non-frivolous legal claim. *Lewis*, 518 U.S. at 351–53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The United States Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X*, 175 F.3d at 391. Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (discussing that *Lewis* changed actual injury to include requirement that action be non-frivolous).

Here, with respect to the legal mail in question, Plaintiff alleges that she eventually received an envelope with the return address of this Court, but that she did not receive any legal mail in the envelope; she alleges no facts about the potential contents of the envelope (for example, what mail she was expecting from the Court). (Compl., ECF No. 1, PageID.23–24.) Nor does Plaintiff alleges facts to suggest that she was pursuing any nonfrivolous action for which she may bring an access to the courts claim, let alone that the envelope contained mail related to such a suit.

(*See id.*) Therefore, Plaintiff fails to show that the interference with her mail resulted in any lost remedy in an underlying nonfrivolous action.

Because Plaintiff has failed to show any lost remedy, she has failed to state a claim for denial of access to the courts. Accordingly, for the reasons set forth above, Plaintiff's access to the courts claim will be dismissed.

### E.     Eighth Amendment Claims

In order for a prisoner to prevail on an Eighth Amendment claim, the prisoner must show that he or she faced a sufficiently serious risk to the prisoner's health or safety and that defendants acted with "'deliberate indifference' to inmate health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he [or she] is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

### 1.     Failure to Protect Claims—Defendants Hardenberg, Fleischer, and Nesbitt

Plaintiff indicates that she is bringing Eighth Amendment claims, and the Court construes Plaintiff's complaint to raise Eighth Amendment failure to protect claims against Defendants Hardenberg, Fleischer, and Nesbitt.

Inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment. *Farmer*, 511 U.S. at 833. Thus, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984). In particular, because officials have "stripped [prisoners] of virtually every means of self-protection[,]" "officials have a duty to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833. However, although "prison officials have a duty [under the Eighth Amendment] to protect prisoners from violence at the hands of other prisoners," it is equally clear that not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials." *Id.* at 833-34 (citations and internal quotation marks omitted).

In this action, Plaintiff alleges the following facts that are relevant to her Eighth Amendment failure to protect claims:[5] (i) on November 9, 2022, Defendant Hardenberg disclosed Plaintiff's transgender status to staff and other inmates (Compl., ECF No. 1, PageID.11); (ii) after this incident with Defendant Hardenberg, Plaintiff was "extorted for money and pressed for sexual favors," and she reported these incidents via the PREA hotline; Defendant Fleischer then interviewed Plaintiff, and Fleischer told Plaintiff that he would place her in another unit "but not place her in protection because protection is for inmates who really need it so she needs to stop trying to be a girl" (*id.*, PageID.12); (iii) in mid-December, Plaintiff was moved to a new unit, and a few days after the move, Plaintiff asked Defendant Nesbitt if Plaintiff could be moved to a new cell because Plaintiff had learned that her cellmate "was not a GID offender" and "had a history of violence inside the MDOC;" Defendant Nesbitt denied Plaintiff's request to be moved; then, on

---

[5] The Court notes that the below listed facts are all relevant to Plaintiff's Eighth Amendment failure to protect claims; however, each individual listed action does not necessarily constitute a separate failure to protect claim.

January 1, 2023, Plaintiff's cellmate hit "Plaintiff in the face" after Plaintiff denied her cellmate's request for a sexual favor; Plaintiff reported the incident to Defendant Nesbitt and asked to be moved to a new cell; Defendant Nesbit again refused to move Plaintiff (*id.*, PageID.17); (iv) on January 17, 2023, Plaintiff received a medical detail "to lock with only other GID inmates due to her diagnosis" and "privacy needs;" Plaintiff gave the medical detail to Defendant Nesbitt, and Nesbitt said that he would not move Plaintiff to a new cell "detail or no detail;" two days later, Plaintiff again asked Defendant Nesbitt to move Plaintiff to a new cell because Plaintiff's cellmate had been threatening "to cause her bodily harm if she didn't perform sexual acts;" Defendant Nesbitt refused to move Plaintiff; a couple of hours later, Plaintiff's cellmate choked Plaintiff and "made Plaintiff agree to perform" a sexual act (*id.*, PageID.17–18).

Based on the facts alleged by Plaintiff, which the Court must take as true and in the light most favorable to Plaintiff at this stage of the proceedings, although Plaintiff has by no means proven her Eighth Amendment failure to protect claims against Defendants Hardenberg, Fleischer, and Nesbitt, the Court will not dismiss these claims at this time.

### 2. Conditions of Confinement Claim regarding Plaintiff's Lack of Shoes During Segregation Yard Time—Defendant Spohn

Plaintiff alleges that Defendant Spohn denied Plaintiff her shoes when she was outside for segregation yard time on January 20, 2023. (Compl., ECF No. 1, PageID.21.) The Court construes this allegation to raise an Eighth Amendment conditions of confinement claim against Defendant Spohn.

The Eighth Amendment protects against the denial of the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). However, the Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for

prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987). "[R]outine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

Plaintiff claims that when Defendant Spohn denied Plaintiff her shoes to use while outside for one hour of yard time on January 20, 2023, "it was snowing and cold." (Compl., ECF No. 1, PageID.21.) Plaintiff states that she was outside without shoes for an hour, and when she returned from being outside, she "requested medical due to pain in [her] chest, throat, and feet." (*Id.*) Although there are instances when certain deprivations for short periods of time are insufficient to state an Eighth Amendment claim, at this early stage of the proceedings, taking Plaintiff's factual allegations as true and in the light most favorable to her, the Court will not dismiss Plaintiff's Eighth Amendment conditions of confinement claim against Defendant Spohn regarding Plaintiff's lack of shoes during segregation yard time on January 20, 2023.

### 3.    Verbal Harassment Claims

The Court construes Plaintiff's complaint to raise Eighth Amendment claims regarding alleged verbal harassment by Defendants.

Although unprofessional, allegations of verbal harassment or taunts by prison officials toward an inmate do not constitute punishment within the meaning of the Eighth Amendment. *Ivey*, 832 F.2d at 955. Additionally, allegations of verbal harassment do not rise to the level of unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *See id.*; *see*

*Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (holding that harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits).

Accordingly, Plaintiff fails to state an Eighth Amendment claim premised on verbal harassment.

**F.      Fourteenth Amendment Claims**

**1.      Procedural Due Process Claims Regarding Misconduct Tickets**

The Court construes Plaintiff's complaint to raise Fourteenth Amendment procedural due process claims regarding Plaintiff's receipt of misconduct tickets at DRF.

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient . . . ." *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

In *Sandin v. Conner*, the Supreme Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. 515 U.S. 472, 484 (1995). According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his [or her] sentence," or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995). In *Sandin*, the Court held that, regardless of the mandatory language of the prison regulations, the inmate did not have a

liberty interest because his placement in administrative segregation did not constitute an atypical and significant hardship within the context of his prison life. *Sandin*, 515 U.S. at 484; *see also Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997). Without a protected liberty interest, a plaintiff cannot successfully claim that his due process rights were violated because "[p]rocess is not an end in itself." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983).

Here, Plaintiff states that she received several misconduct tickets, two of which were ultimately dismissed, and without specifically articulating a claim, Plaintiff references unspecified due process violations with respect to her misconduct tickets. (*See, e.g.*, Compl., ECF No. 1, PageID.11, 15, 23.) As explained below, Plaintiff fails to state a Fourteenth Amendment due process claim regarding her receipt of these misconduct tickets. As an initial matter, Plaintiff does not indicate what sanctions, if any, she received as a result of any misconduct convictions. Therefore, Plaintiff necessarily fails to show that any sanction "inevitably affect[ed] the duration of h[er] sentence" or imposed an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486–87. Regardless, the sanctions available in the MDOC disciplinary scheme do not affect the duration of an inmate's sentence, and placement in segregation for a limited period of time or the receipt of the loss of privileges sanction[6] do not

---

[6] Pursuant to MDOC policy during the relevant time period, "all of the following privileges will be lost by a prisoner as a result of a 'loss of privileges' sanction:"

> A. Day room, activity room, TV room, study room, or other designated area where similar activities occur[;] B. Exercise facilities, such as yard, gym, and weight room/pit[;] C. Group meetings, such as Bible class and Jaycees, but not including primary religious worship service; this does not apply to group therapy[;] D. Out of cell hobbycraft activities[;] E. Kitchen area, including microwave, ice machine, and hot water dispenser[;] F. Direct access to general library (not law library; prisoners in segregation shall continue to have books delivered to them consistent with PD 04.05.120 "Segregation Standards")[;] G. Movies[;] H. Music practice; musical instruments[;] I. Leisure time activities offered pursuant to PD 05.03.104 "Leisure Time Activities," except as approved by Warden or designee[;] J. Telephone, except calls to the Office of Legislative Corrections Ombudsman and

constitute "atypical and significant hardship[s]," as contemplated by *Sandin*. *See, e.g.*, *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007) (discussing that the loss of disciplinary credits under the MDOC's disciplinary scheme does not affect the duration of a prisoner's sentence); *Sandin*, 515 U.S. at 484 (holding that placement in segregation for 30 days does not impose an atypical and significant hardship); *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010) (finding that 61 days in segregation is not atypical and significant); *cf. Bazzetta*, 430 F.3d at 805 (concluding that a permanent, but reviewable, loss of visitation privileges did not "rise[] to the level of egregious conduct necessary to implicate the implicit guarantees of the Due Process Clause" (citing *Overton v. Bazzetta*, 539 U.S. 126, 134 (2003))); *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) (finding that prisoners have no constitutional right to rehabilitation, education, or jobs).

Moreover, although Plaintiff alleges that some of the misconduct tickets were ultimately dismissed, even if Plaintiff had alleged the loss of a protected liberty interest, she would not state a due process claim because she fails to show that she did not receive all the process due to her. *See generally Wolff*, 418 U.S. at 539 (setting forth the minimum process required for prison disciplinary proceedings that implicate a liberty interest). In all cases where a person stands to be deprived of his life, liberty or property, he or she is entitled to due process of law. This due process of law gives the person the opportunity to convince an unbiased decision maker that, for example, she has been wrongly or falsely accused or that the evidence against her is false. That is, the right to due process protects Plaintiff's ability to *respond* to spurious charges. It does not include the

---

to return calls from an attorney upon request of the attorney[;] K. Visiting[, t]his applies only if hearing officer identified in the hearing report that the misconduct occurred in connection with a visit, and only with the visitor named in the hearing report[; and] L. Use of kiosk (e.g., to send/receive electronic messages or retrieve account information).

MDOC Policy Directive 03.03.105, Att. E (eff. Apr. 18, 2022).

right to *prevent* or *prevail* on such charges. *See Zinermon v. Burch*, 494 U.S. 113, 125 (1990) ("[T]he deprivation by state action of a constitutionally protected interest in 'life, liberty or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." (emphasis in original) (citations omitted)).

Accordingly, for all of the foregoing reasons, Plaintiff fails to state a Fourteenth Amendment procedural due process claim regarding her receipt of misconduct tickets.

### 2. Procedural Due Process Claims regarding Confiscation of Headphones and Destruction of Legal Mail

Plaintiff claims that by confiscating her personal property (i.e., headphones and mail) and denying her a hearing regarding the confiscation of her property, she was deprived of her property without due process of law. (*See* Compl., ECF No. 1, PageID.15–16, 23–24.) As explained below, these claims are barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986).

Under *Parratt*, an individual deprived of property by a "random and unauthorized act" of a state employee cannot maintain a federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, while real, is not "without due process of law." *Id.* at 537. This doctrine applies to both negligent and intentional deprivations of property, as long as the deprivation was not pursuant to an established state procedure. *See Hudson*, 468 U.S. at 530–36. Plaintiff must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). The Sixth Circuit has noted that a prisoner's failure to sustain this burden requires dismissal of his Section 1983 due process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

27

The Sixth Circuit has specifically held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Here, Plaintiff has numerous state post-deprivation remedies available to her, and she fails to allege that her state post-deprivation remedies are inadequate. Plaintiff fails to allege any reasons why a state-court action would not afford her complete relief for the deprivations, either negligent or intentional, of her personal property.

Accordingly, Plaintiff fails to state a Fourteenth Amendment due process claim regarding the deprivation of her property and the denial of a hearing regarding the confiscation of her property.

### 3.    Privacy Interest Claim—Defendant Hardenberg

Plaintiff claims that Defendant Hardenberg's disclosure of Plaintiff's transgender status violated Plaintiff's Fourteenth Amendment right to privacy. (Compl., ECF No. 1, PageID.12–13.)

In *Moore v. Prevo*, the Sixth Circuit held that although "inmates have no constitutional privacy right barring disclosure of [sensitive medical-related information] to *corrections officers*," inmates may have a Fourteenth Amendment privacy interest, subject to legitimate penological interests, in guarding against the distribution of their sensitive medical information to *other inmates*. 379 F. App'x 425, 427–28 (6th Cir. 2010) (emphasis in original); *see Powell v. Schriver*, 175 F.3d 107, 112 (2d Cir. 1999) (concluding that an inmate had a privacy interest in keeping the inmate's transgender status from other inmates). Here, Plaintiff alleges that on November 9, 2022, Defendant Hardenberg "stated in front of other officers and inmates" that he had written Plaintiff the November 1, 2022, misconduct report because Hardenberg "called health care and they said [Plaintiff] did not take [her] hormone pills" and Hardenberg "want[ed] them GID t[***] [to] grow." (Compl., ECF No. 1, PageID.11.) An inmate then asked Defendant Hardenberg what "GID" stood for, and Hardenberg said that Plaintiff was a "chick with a d[***]" and was taking

hormones. (*Id.*) To the extent Plaintiff claims that Defendant Hardenberg's disclosure to other corrections officers violated her Fourteenth Amendment rights, she fails to state a claim. *See Moore*, 379 F. App'x at 427–28. However, as to Plaintiff's allegation that Defendant Hardenberg disclosed this information to other inmates, at this time, the Court will not dismiss Plaintiff's Fourteenth Amendment privacy interest claim.

### G.    Claims regarding Violation of MDOC Policy

Throughout Plaintiff's complaint, she references various MDOC policies. (*See generally* Compl., ECF No. 1.) To the extent that Plaintiff intended to bring claims under Section 1983 regarding violations of MDOC policy, as explained below, she fails to state such a claim pursuant to Section 1983.

Claims under Section 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Therefore, Plaintiff's assertion that Defendants violated MDOC policy fails to state a claim under Section 1983.

Moreover, "[w]ithout a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)). Courts routinely have recognized that a prisoner does not enjoy any federally protected liberty or property interest in state procedure. *See Olim*, 461 U.S. at 250' *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001). Thus, Plaintiff's allegation that Defendants violated prison policy fails to raise a cognizable federal claim.

Accordingly, for the reasons set forth above, Plaintiff's Section 1983 claims regarding the violation of MDOC policy will be dismissed.

### H.      ADA Claim

Plaintiff references Defendant Blair violating the ADA with respect to having "effective communication established during misconduct hearing[s] for the hard of hearing and hearing impaired inmates." (Compl., ECF No. 1, PageID.14.) The Court construes this allegation to raise an ADA claim against Defendant Blair.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. In the ADA, the term "disability" is defined as follows: "[1] a physical or mental impairment that substantially limits one or more of the major life activities of such individual; [2] a record of such an impairment; or [3] being regarded as having such an impairment." *Id.* § 12102(2).

The Supreme Court has held that Title II of the ADA applies to state prisons and inmates, *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210–12 (1998), and the proper defendant for Title II ADA claims is the public entity or an official acting in his official capacity. *Carten v. Kent State Univ.*, 282 F.3d 391, 396–97 (6th Cir. 2002); *see, e.g.*, *Tanney v. Boles*, 400 F. Supp. 2d 1027, 1044 (E.D. Mich. 2005) (citations omitted). Plaintiff sues Defendant Blair in Blair's official capacity and individual capacity. Because Plaintiff may not pursue an ADA claim against Defendant Blair in Blair's individual capacity, any intended ADA claims against Defendant Blair in Blair's individual capacity will be dismissed.

As to Plaintiff's official capacity ADA claim, the State of Michigan (acting through the MDOC) is not necessarily immune from Plaintiff's claims under the ADA. *See, e.g.*, *Tanney*, 400

F. Supp. 2d at 1044–47. The ADA "validly abrogates state sovereign immunity" for "conduct that *actually* violates the Fourteenth Amendment[.]" *United States v. Georgia*, 546 U.S. 151, 159 (2006). If conduct violates the ADA but not the Fourteenth Amendment, then the Court must determine whether the ADA validly abrogates state sovereign immunity. *Id.* At this stage of the proceedings, the Court will presume that the ADA validly abrogates state sovereign immunity for Plaintiff's ADA claim.

Turning to the merits of Plaintiff's ADA claim, as an initial matter, with respect to Plaintiff's claim against Defendant Blair regarding establishing "effective communication" during misconduct hearings, Plaintiff fails to allege sufficient facts to show that she has a disability pursuant to the ADA. *See* 42 U.S.C. § 12102(2); *see also* 29 U.S.C. § 794(a). Plaintiff vaguely alleges that "effective communication [must be] established during misconduct hearing[s] for the hard of hearing and hearing impaired inmates," however, nowhere in the complaint does Plaintiff indicate that she has any hearing impairment. (Compl., ECF No. 1, PageID.14.) Moreover, even assuming, without deciding, that Plaintiff had alleged sufficient facts to show that she has a disability pursuant to the ADA, Plaintiff's conclusory allegations, which are unsupported by any facts, do not show that she was excluded from a service or program, denied accommodation, or discriminated against due to her disability.

Therefore, Plaintiff's conclusory allegation of an ADA violation without specific supporting factual allegations fails to state a claim. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Accordingly, Plaintiff's ADA claim will be dismissed.

## I.    State Law Negligence Claim—Defendant Nesbitt

Finally, Plaintiff alleges that Defendant Nesbitt acted negligently in response to Plaintiff's request to be moved to a new cell or to protective custody. (*See* Compl., ECF No. 1, PageID.19–20.)

As an initial matter, as discussed above, Plaintiff's assertion that Defendant violated state law fails to state a claim under Section 1983. *See Pyles*, 60 F.3d at 1215; *Sweeton*, 27 F.3d at 1166. Further, in determining whether to retain supplemental jurisdiction over state law claims, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)). Here, because Plaintiff continues to have pending federal claims against Defendant Nesbitt, the Court will exercise supplemental jurisdiction over Plaintiff's state law negligence claim against Defendant Nesbitt.

### Conclusion

The Court will grant Plaintiff leave to proceed *in forma pauperis*. Having conducted the review required by the PLRA, the Court determines that Defendant Rewerts will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Hardenberg, Gager, Nesbitt, Fleischer, Copeland, Blair, Spohn, and Lott: (i) official capacity claims; (ii) claims regarding the interference with Plaintiff's access to one piece of unspecified legal mail; (iii) access to the courts claims; (iv) Eighth Amendment claims premised on verbal harassment; (v) Fourteenth Amendment procedural due process claims regarding Plaintiff's receipt of misconduct tickets; (vi) Fourteenth Amendment due process claims regarding the deprivation of Plaintiff's property and the denial of a hearing regarding the confiscation of her property; (vii) Plaintiff's Fourteenth Amendment privacy interest claim regarding Defendant Hardenberg's disclosure of Plaintiff's transgender status to other corrections officers; (viii) Section 1983 claims regarding the violation of MDOC policy; and (ix) ADA claim.

32

The following claims against Defendants Hardenberg, Gager, Nesbitt, Fleischer, Copeland, Blair, Spohn, and Lott in their individual capacities remain in the case: (i) First Amendment retaliation claims against Defendants Hardenberg, Gager, Nesbitt, Spohn, Copeland, Blair, and Lott; (ii) Eighth Amendment failure to protect claims against Defendants Hardenberg, Fleischer, and Nesbitt; (iii) Eighth Amendment conditions of confinement claim against Defendant Spohn regarding Plaintiff's lack of shoes during segregation yard time on January 20, 2023; (iv) Plaintiff's Fourteenth Amendment privacy interest claim regarding Defendant Hardenberg's disclosure of Plaintiff's transgender status to other inmates; and (v) Plaintiff's state law negligence claim against Defendant Nesbitt.

An order consistent with this opinion will be entered.


Dated:   March 4, 2025                          /s/ Sally J. Berens
                                               SALLY J. BERENS
                                               United States Magistrate Judge