UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMAR WALKER #720647,

        Plaintiff,                                  Hon. Jane M. Beckering

v.                                                     Case No. 1:24-cv-726

KELLY HARDENBURGH et al.,

        Defendants.
_____/

**REPORT AND RECOMMENDATION**

This matter is before me on Defendants Fleisher, Copeland, Blair, and Lott's Motion for Summary Judgment on the ground that Plaintiff failed to exhaust her administrative remedies on her claims against them.[1] (ECF No. 22.) Plaintiff has failed to respond to the motion within the time permitted by Western District of Michigan Local Civil Rule 7.2(c).[2] Pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that the motion be **GRANTED** as to the claim against Defendant Fleisher and the retaliatory misconduct ticket claim against Defendant Lott but be **DENIED** as to the retaliatory mail-withholding claim against Defendants Copeland, Blair, and Lott.

---

[1] Because Plaintiff identifies as a transgender female, I will use female pronouns herein when referring to Plaintiff.

[2] Although Plaintiff is proceeding pro, she is still expected to comply with the applicable court rules. *See Strohmeyer v. Chase Bank USA, N.A.*, No. 3:17-cv-443, 2018 WL 2669991, at *2 (E.D. Tenn. June 4, 2018) ("It is correct that pro se parties are expected to comply with the rules of procedure just as parties represented by counsel must do."); *Jones v. Graley,* No. 2:05-cv-773, 2006 WL 1697637, at *1 (S.D. Ohio June 20, 2006) (although federal courts have treated pro se litigants more leniently, they "are still expected to comply with the procedural rules of the court").

## I. Background

Plaintiff, who is currently incarcerated with the Michigan Department of Corrections (MDOC) at the St. Louis Correctional Facility, filed a complaint against several MDOC employees on July 7, 2024, alleging claims pursuant to 42 U.S.C. § 1983 based on events that occurred at Carson City Correctional Facility (DRF) in late 2022 and early 2023. Following the Court's initial review pursuant to 28 U.S.C. §§ 1915(e)(2), 1915A, and 42 U.S.C. § 1997e(c), Plaintiff's remaining claims are her: (1) First Amendment retaliation claims against Defendants Hardenberg, Gager, Nesbitt, Spohn, Copeland, Blair, and Lott; (2) Eighth Amendment failure to protect claims against Defendants Hardenberg, Fleischer, and Nesbitt; (3) Eighth Amendment conditions of confinement claim against Defendant Spohn regarding lack of shoes during segregation yard time on January 20, 2023; (4) Fourteenth Amendment privacy interest claim against Defendant Hardenberg as it pertains to other prisoners; and (5) state-law negligence claim against Defendant Nesbitt. (ECF No. 12 at PageID.45.)

I previously summarized Plaintiff's allegations regarding the moving Defendants as follows:

> In Plaintiff's complaint, she states that she was "diagnosed with Gender Dysphoria" on August 17, 2022, and that she is "a transgender inmate (male to female)," who uses "she and her" pronouns. (*Id.*, PageID.11.) Plaintiff states that she did not disclose "her transgender/[gender identity disorder (GID)] status to other inmates" at DRF. (*Id.*)
>
> On November 1, 2022, "Plaintiff discreetly informed Defendant Hardenberg that she need[ed] to take a shower during count for privacy and safety concerns due to her being on GID status." (*Id.*) In response, Defendant Hardenberg "loudly replied," stating: "I know you[ are] GID but you f[******] don't get special treatments on my shift so take your shower on your yard like a man . . . ." (*Id.*) Plaintiff then told Defendant Hardenberg that she would be filing a Prison Rape Elimination Act (PREA) grievance regarding this issue. (*Id.*) Thereafter, Defendant Hardenberg wrote a "falsified" misconduct report, "which Plaintiff was found guilty [of] by Defendant Blair but [it] was later dismissed for a due process violation." (*Id.*)

2

Subsequently, on November 9, 2022, Defendant Hardenberg "stated in front of other officers and inmates" that he had written Plaintiff the November 1, 2022 misconduct report because Hardenberg "called health care and they said [Plaintiff] did not take [her] hormone pills" and Hardenberg "want[ed] them GID t[***] [to] grow." (*Id.*) An inmate then asked Defendant Hardenberg what "GID" stood for, and Hardenberg said that Plaintiff was a "chick with a d[***]" and was taking hormones. (*Id.*) Plaintiff asked Defendant Hardenberg not to tell others about "her personal information," and Plaintiff asked to speak to a sergeant. (*Id.*, PageID.11–12.) Defendant Hardenberg denied Plaintiff's request and ordered her to go to the medicine line. (*Id.*, PageID.12.) Plaintiff complied, but after she returned to her unit, she reported the incident and again asked to speak to a sergeant. (*Id.*) A non-party sergeant arrived and Plaintiff asked to be placed in protective custody. (*Id.*) Defendant Hardenberg then "intervened" and told Plaintiff that if she went to segregation it would be for a disobeying a direct order misconduct for "refusal to lock." (*Id.*) "Plaintiff decided against going to segregation for a misconduct" and instead returned to her cell. (*Id.*) That same day, November 9, 2022, Plaintiff filed a "PREA/grievance against [Defendant Hardenberg] . . . for disclosing [that Plaintiff] was [a] GID inmate."3 (*Id.*, PageID.17.)

Plaintiff alleges that over the following weeks, she was "extorted for money and pressed for sexual favors." (*Id.*, PageID.12.) Plaintiff reported these incidents via the PREA hotline. (*Id.*) Defendant Fleischer then interviewed Plaintiff, and Fleischer told Plaintiff that he would place her in another unit "but not place her in protection because protection is for inmates who really need it so she needs to stop trying to be a girl." (*Id.*)

. . . .

On January 26, 2023, Defendant Copeland came to Plaintiff's cell to pass out mail. (*Id.*) Defendant Copeland told Plaintiff that she had legal mail, but that Copeland "was told by [Defendant] Blair not to give it to [Plaintiff] because [of] the PREAs [Plaintiff had] on Hardenberg and Spohn." (*Id.*) The next day, January 27, 2023, Plaintiff asked Defendant Blair about Plaintiff's legal mail, and Blair stated: "Yea[h], I have it in my office but if you don't apologize to Hardenberg [and] agree to stop calling the PREA hotline and sign off [on] the PREA grievance on Spohn, you[ are] not getting it cause you[ are] a real pain in the ass." (*Id.*) Shortly thereafter, Defendant Lott conducted rounds in the unit, and asked if Plaintiff was "ready to sign off those grievance[s]" so she could "get [her] legal mail." (*Id.*) Plaintiff refused to sign off on the grievances and asked "to see shift command." (*Id.*) At an unspecified time after this, Defendant Lott wrote Plaintiff a false misconduct ticket, "which Defendant Blair found her guilty on but was later dismissed" by the non-party Assistant Deputy Warden. (*Id.*) During the evening meal on an unspecified date, Plaintiff asked Defendant Copeland about Plaintiff's legal mail, and Copeland stated: "I'm not giving it to you unless you agree to do what the boss said with those grievances." (*Id.*) Plaintiff then told Defendant Copeland that she would be writing a grievance. (*Id.*) Plaintiff states that she later received an envelope with the return address of this Court, but did not receive any mail in the envelope. (*Id.*, PageID.24.)

3

(ECF No. 12 at PageID.16–17, 19–20.)

## II.  Discussion

Defendants Fleisher, Copeland, Blair, and Lott move for summary judgment based on Plaintiff's failure to exhaust administrative remedies on claims against them. Plaintiff's claims at issue are that: (1) Defendants Copeland, Blair, and Lott retaliated against her on January 26 and January 27, 2023, by denying Plaintiff a piece of legal mail due to the PREAs that she filed against Defendants Hardenburgh and Spohn; (2) Defendant Lott retaliated by writing a "false" misconduct ticket on Plaintiff; and (3) Defendant Fleisher failed to protect Plaintiff. (ECF No. 12 at PageID.27, 33.)

Generally, where the non-moving party fails to respond to a motion for summary judgment, "the district court must, at a minimum, examine the moving party's motion for summary judgment to ensure that it has discharged its initial burden." *Miller v. Shore Fin. Servs., Inc.*, 141 F. App'x 417, 419 (6th Cir. 2005) (citing *Stough v. Mayville Cmty. Sch.*, 138 F.3d 612, 614 (6th Cir. 1998)). In addition, because failure to exhaust is an affirmative defense upon which a defendant bears the burden of proof, *see Jones v. Bock*, 549 U.S. 199, 216 (2007), the Court must ensure that "no reasonable trier of fact could find other than for [Defendants]." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986).

The Supreme Court has held that a prisoner properly exhausts a claim for purposes of 42 U.S.C. § 1997e(a) by complying with the prison's "deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Jones*, the Court reiterated:

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to "properly exhaust." The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

4

*Jones*, 549 U.S. at 218. A prisoner incarcerated with the MDOC must "pursue a grievance through all three steps of the grievance process [set forth in MDOC Policy Directive 03.02.130]." *Weatherspoon v. Strahan*, No. 18-2210, 2019 WL 5306842, at *1 (6th Cir. June 4, 2019). This process must be completed at all levels prior to filing an action in federal court. *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999).

      A.      **Step III Grievance Report**

In support of their motion, Defendants submit a Step III Grievance Report for Plaintiff dated March 10, 2025, which shows Plaintiff's grievance activity prior to the date of the Step III report. (ECF No. 23-3.) As Defendants note, the Step III report shows that Plaintiff filed four grievances arising out of DRF, only one of which, DRF-23-02-0264-17A (0264 Grievance), pertains to any of the moving Defendants. In the 0264 Grievance, Plaintiff complained that on January 26, 2023, Defendants Blair, Lott, and Copeland refused to give him his legal mail due to his grievance activity. (*Id.* at PageID.118.) The grievance was denied at Step I. (*Id.* at PageID.119.) Plaintiff's Step II appeal was rejected as untimely. (*Id.* at PageID.116.) Plaintiff filed a Step III appeal arguing that the Step II rejection was improper because his filing was untimely due to his transfer to another facility. (*Id.* at PageID.115.) Plaintiff's Step III appeal was denied because, "Upon examination it has been determined that your issue was in fact considered, investigated, and a proper decision was rendered." (*Id.* at PageID.114.)

Defendants correctly note that none of the four grievances could have exhausted a claim against Defendant Fleisher because he was not named in any of them. Thus, Plaintiff's claim against Defendant Fleisher is properly dismissed without prejudice. As for Defendants Blair, Copeland, and Lott, Defendants contend that the 0264 grievance could not have exhausted Plaintiff's retaliation claims against them because the Step II appeal was rejected as untimely.

5

(ECF No. 23 at PageID.95.) This argument ignores that Plaintiff contested the rejection in his Step III appeal, and the Step III respondent did not uphold the Step II rejection. Instead the Step III response stated that the grievance had been "considered" and "investigated" and "a proper decision was rendered." (*Id.* at PageID.114.)

Cases from this district addressing the same circumstances have found that, at a minimum, an issue of fact remains as to whether the plaintiff properly exhausted the grievance. For example, in *Carter v. Supnick*, No. 2:18-cv-3, 2019 WL 613273 (W.D. Mich. Jan. 7, 2019), *report and recommendation adopted*, 2019 WL 588080 (W.D. Mich. Feb. 13, 2019), the plaintiff's Step I grievance was denied but the Step II appeal was rejected as untimely. The plaintiff appealed to step III, explaining that his Step II appeal was late because he had been transferred to another prison and did not timely receive the appeal form due to his transfer. The Step III appeal was denied. The court explained that a question of fact remained:

> In the opinion of the undersigned, a question of fact exists regarding whether Plaintiff properly exhausted his grievance remedies. It appears that Plaintiff exhausted the remedies that were available to him as soon as he could under the circumstances. Plaintiff was transferred to a different prison while he was grieving his issues against Defendants Naeyaert and Lundquist. It appears that Plaintiff could not have timely filed his Step II grievances due to the prison transfer which caused the delay in his receipt of the Step I responses. Defendants have not fully developed the record. In the opinion of the undersigned, Plaintiff has shown that his untimely filings were the result of his transfer to a new prison and the late date that he received the Step I responses.

*Id.* at *4. Similarly, in *Martin v. Downs*, No. 2:18-cv-173, 2020 WL 919730 (W.D. Mich. Feb. 26, 2020), the court found that a genuine issue of material fact remained because the Step I grievance was denied on the merits, the Step II appeal was rejected as untimely, and, as here, the Step III appeal was "denied" and not "rejected," and the denial stated that the plaintiff's grievance "was in fact considered, investigated, and a proper decision was rendered." *Id.* at *1. The court found the defendants' motion was properly denied because the Step III response "strongly suggest[ed] that

6

the denial was on the merits." *Id.* The same circumstances are present here. Accordingly, I recommend that the motion be denied as to the retaliatory mail claim against Defendants Blair, Copeland, and Lott.

### B.    Retaliatory Misconduct

Defendants contend that Plaintiff failed to exhaust her claim against Defendant Lott for the retaliatory misconduct ticket. The process for exhausting a claim that a misconduct ticket was retaliatory differs from the grievance process set forth above.

Because Plaintiff's claim against Defendant Lott is based on the alleged retaliatory issuance of a Class II misconduct ticket, she was required to exhaust her claim by raising the issue of retaliation during the misconduct hearing. *See Smith v. Goulet*, No. 1:17-cv-618, 2018 WL 3688468 at *2 (W.D. Mich. Aug. 3, 2018) ("Because the ordinary grievance procedure does not apply to disputes arising out of misconduct hearings, the prisoner must instead raise the issue in the misconduct hearing."); *Miller v. Klee*, No. 17-11006, 2018 WL 1354473 at *5 (E.D. Mich. Feb. 23, 2018) (stating that "a prisoner claiming that the issuance of a misconduct ticket constitutes retaliation, must raise that issue during the first misconduct hearing in order to exhaust administrative remedies"); *Alexander v. Ojala*, No. 2:16-cv-85, 2016 WL 6662559, at *3 (W.D. Mich. Sept. 23, 2016), *report and recommendation adopted*, 2016 WL 6659133 (W.D. Mich. Nov. 10, 2016) (concluding that the plaintiff could only exhaust his retaliation claim for minor misconduct ticket by asserting the claim during his misconduct hearing.). In addition, after raising the issue during the hearing, a prisoner must file an appeal based on retaliation. *See Johnson v. Newcomb*, No. 2:19-cv-93, 2020 WL 9311855, at *3 (W.D. Mich. May 1, 2020), *report and recommendation adopted*, 2021WL 940590 (W.D. Mich. Mar. 12, 2021) (citing Mich. Dep't of Corrs. Policy Directive 03.03.105 ¶¶ UUU–XXX).

7

Defendants have submitted the packet for the January 27, 2023 Class II misconduct that Defendant Lott issued to Plaintiff for insolence. (ECF No. 23-6.) Plaintiff was found guilty following a hearing on the misconduct, but he filed an appeal. The guilty finding was overturned on appeal, not because Plaintiff did not engage in the charged conduct, but because he was no longer at the facility and had served the sanctions. (*Id.* at PageID.149.) However, there is no indication that Plaintiff raised the issue of retaliation during the hearing or in his appeal. (*Id.* at PageID.150–53.) Thus, Defendants have shown that Plaintiff failed to exhaust this claim.

### III.  Conclusion

For the foregoing reasons, I recommend that Defendants' motion (ECF No. 22) be **granted** as to Plaintiff's Eighth Amendment failure to protect claim against Defendant Fleisher and as to Plaintiff's retaliatory misconduct claim against Defendant Lott and that those claims be **dismissed without prejudice**. I further recommend that the motion be **denied** with regard to Plaintiff's mail withholding claim against Defendants Copeland, Blair, and Lott.

Dated: September 2, 2025      /s/ Sally J. Berens
SALLY J. BERENS
U.S. Magistrate Judge

### NOTICE

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).